**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MARIA LEWIS-STERLING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:08-CV-02335 |
| | § | |
| CHRISTUS HOMECARE d/b/a | § | |
| CHRISTUS VISITING NURSE | § | |
| ASSOCIATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this case alleging race discrimination and retaliation, among other claims, Defendant Christus Homecare d/b/a Christus Visiting Nurse Association ("Christus") has filed a Motion for Summary Judgment.[1]  Plaintiff has responded, Defendant has replied,[2] and the motion now is ripe for decision.  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that the Motion should be **granted**.

---

[1]   Motion for Summary Judgment [Doc. # 38] ("Motion").  Defendant's correct name is Christus Homecare d/b/a Christus Visiting Nurse Association of Houston.  *Id*. at 1.

[2]   Response in Opposition to Defendant's Motion for Summary Judgment [Doc. # 44] ("Response"); Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment [Doc. # 45] ("Reply").  Christus also has filed a Motion to Strike Plaintiff's Summary Judgment Affidavit [Doc. # 46], to which Plaintiff has responded [Doc. # 47].

## I.    BACKGROUND

In August 2005, Plaintiff was hired as a Primary Home Care Supervisor by Christus.  Shortly thereafter, in January 2006, Plaintiff began a second position as a Community Health Nurse, through a separate Christus department, as part of the Casa Juan Diego (CJD) project.  The CJD project, which was a health care ministry to undocumented immigrants, was funded by a one-time, lump sum grant from the Sisters of Charity of the Incarnate Word.[3]  Plaintiff's salary as a Community Health Nurse was funded wholly by the grant.[4]  The grant money would last as long as Christus could make it last, and Plaintiff was expected to help "stretch" the grant money by maximizing her visits to CJD.[5]

Plaintiff states that she, along with CJD personnel, set up the CJD program "from scratch."[6]  She maintains that her schedule always was flexible, and that she sometimes saw CJD clients on the weekends if necessary.[7]

---

[3]    Deposition of Kay Mitchell (Exhibit 3 to Motion) ("Mitchell Deposition"), at 16. Mitchell was a Christus employee and, for part of the time relevant to this lawsuit, was Plaintiff's supervisor.

[4]    *Id*. at 20.

[5]    *Id*. at 16, 20.

[6]    Response, at 3.

[7]    *Id.* at 3-4; Affidavit of Maria Lewis-Sterling in Support of Her Response in Opposition to Defendant's Motion for Summary Judgment (Exhibit 1 to Response) (continued...)

In May 2006, at Plaintiff's request, Plaintiff's employment status was changed from full-time to part-time so that she could attend school.  Plaintiff and Margaret Bellamy, then Plaintiff's manager at Christus, agreed that Plaintiff would work 32 hours on Mondays, Wednesdays, Fridays, and Saturdays, and that she would not work on Tuesdays and Thursdays.[8]  Her new schedule went into effect on May 28, 2006.

Just weeks later, on June 13, 2006, Plaintiff was diagnosed with breast cancer.[9] Plaintiff informed Bellamy, whom Plaintiff describes as "extremely supportive" and who told Plaintiff to "take as much time as [she] needed."[10]  Because Plaintiff had not yet worked for Christus for one year, she was not eligible for a leave of absence under the Family and Medical Leave Act; however, she was permitted to take time without pay and to use accrued leave time.[11]  Plaintiff had surgery on August 3, 2006, and took leave from work from August 3 through August 10.[12]  She received seven weeks of radiation treatment in October and November, and was permitted to schedule her work

---

[7]      (...continued)
("Plaintiff Affidavit"), at 1-2, ¶ 4.

[8]      Email Chain dated May 12, 2006 (Exhibit 2-D to Motion).

[9]      Deposition of Maria Lewis-Sterling (Exhibit 1 to Motion) ("Plaintiff Deposition"), at 135-36.

[10]      *Id.*

[11]      *Id.* at 138.

[12]      *Id.* at 136, 145.

hours around her treatment schedule.[13]  Plaintiff then began a five-year course of the cancer drug Tamoxafen.[14]

Plaintiff states that, during this period, she was very concerned that the grant money for the CJD project would be exhausted and that she would lose her health insurance benefits, which was especially troubling to her given the expense of her cancer treatments and medication.[15]  Plaintiff heard rumors that the grant was ending and requested information from Bellamy, Mitchell, and others at Christus, communicating to them that her request for information was especially urgent because she needed to ensure that her health benefits would not be interrupted.  However, no one at Christus told her when the grant money would be exhausted.[16]

In August 2006, around the time of Plaintiff's surgery and leave of absence, Kay Mitchell became the director of the department in which Plaintiff worked as a Community Health Nurse for the CJD project.[17]  Mitchell met with Plaintiff on August 22, 2006, and, among other things, informed Plaintiff that her visits with CJD patients

---

[13]     *Id*. at 151, 154.

[14]     Response, at 5.

[15]     *Id.*

[16]     Plaintiff Affidavit, at 2-3, ¶ 9.

[17]     Mitchell Deposition, at 11-12, 20-22.

were to take place between 8:00 a.m. and 5:00 p.m.[18]   Mitchell's notes from the

meeting indicate that Plaintiff's hours were 8:00 a.m. to 5:00 p.m. on Mondays,

Wednesdays, Fridays, and Saturdays.[19]   At the same meeting, Mitchell advised

Plaintiff that she was required to attend weekly meetings with CJD personnel and with

the physician signing orders for CJD patients, both of which were to occur on Fridays,

and that she would have a weekly meeting with Plaintiff's supervisor or with

Mitchell.[20]

On or about January 20, 2007, Plaintiff told Mitchell that, because no one at

Christus was able to tell her whether the CJD grant would be renewed,  she planned

to take an additional part-time job with a different employer.[21]   Plaintiff states that it

---

[18]    *Id*. at 24-29.  The topics discussed are listed in an agenda prepared by Mitchell before
the meeting, and supplemented during the meeting.  *Id*. at 24; Agenda, dated Aug. 22,
2006 (Exhibit 4-B to Motion).

[19]    Agenda (Exhibit 4-B to Motion).  Plaintiff characterizes this as a schedule change,
states that there was "no good reason" for the change, and protests that the change
"was not practical because Plaintiff frequently had to meet with patient[s'] relatives
who worked during the day early in the morning, or after work."  Response, at 6-7.
However, the record before the Court indicates that, prior to this meeting, Plaintiff's
schedule had required her to work 32 hours per week on the same days.  *See* Email
Chain dated May 12, 2006 (Exhibit 2-D to Motion) (Plaintiff and Bellamy agree that
Plaintiff will work 32 hours per week, working on Mondays, Wednesdays, Fridays,
and Saturdays).

[20]    Mitchell Deposition, at 27-28; Agenda (Exhibit 4-B to Motion).

[21]    Plaintiff Deposition, at 180-81; Mitchell Deposition, at 37-38.  Plaintiff states in her
affidavit that, in January 2007, Mitchell and Gay Christ, Plaintiff's direct supervisor,
(continued...)

was common in nursing, and at Christus, for nurses to have second jobs.[22]  Plaintiff

requested a modified schedule to permit her to attend a two-week orientation for the

new job.[23]  Mitchell, who states that she understood that Plaintiff would return to her

regular Christus hours after the two-week orientation, granted the request.[24]

On January 31, 2007, Plaintiff notified Mitchell by email that she had accepted

the additional job, effective February 5, 2007:

> . . . I have accepted another work assignment, effective 2-5-07, to
> accommodate my income needs. . . . Here is my schedule for my
> orientation, next week, which will be from 2/5/07 thru 2/16/07. I will be
> in orientation every day from 8:30-4:30 M-F. Then I will be working for
> the next 3-4 months from 7:30 am to 3:30 pm, M-F.  I have also
> informed my new manager of my plans to continue working for VNA
> [Christus] as an hourly employee around my schedule.  She has agreed
> to allow me to do this to maintain my benefits, and to supplement my

---

[21]    (...continued)
"were in the middle of a State audit and would not tell me whether the grant was
going to end.  They would only say that the grant was running out of money.  I told
them that I really needed to know, because I was in the middle of my cancer
treatment.  I told them that I may need to get another job, because I could not just wait
to see what was going to happen, since the day of termination my health benefits
would end.  That is exactly what happened to me."  Plaintiff Affidavit, at 2-3, ¶ 9.

[22]    *Id*. at 5, ¶ 24 ("Many nurses, and even the social worker, often worked two, and even
three jobs, while working full time at [Christus]"); Plaintiff Affidavit, at 3, ¶ 12
("Many other people at Christus, including my manager, had two jobs.  That was not
unusual.").

[23]    Plaintiff Deposition, at 181; Mitchell Deposition, at 37-38  (Plaintiff requested a
schedule of Monday-Friday from 3:30-7:30 p.m., with the remainder of her 32 hours
worked on Saturday and Sunday).

[24]    Mitchell Deposition, at 38-39.

income, as desired.

* * * *

. . . . I appreciate the opportunity to work this schedule until 6/07 to
maintain my health insurance/benefits, and to supplement my income,
with the enormous medical expenses that I now have.  Thank [y]ou for
assisting me with making this a smooth transition. [25]

Mitchell testified at deposition that she was surprised by this email, because it

indicated a schedule change for three to four months, rather than for a two-week

orientation.[26]

Mitchell denied the requested schedule modification, deciding that Plaintiff's

request was not in the patients' best interests because it could delay services, and was

not in the best interest of other employees who would have to assume additional duties

during regular business hours.[27]  Plaintiff states that Mitchell, when considering the

request, asked her, "How are you going to work two jobs with breast cancer?"[28]

_____

[25]    Email from Plaintiff to Mitchell, dated Jan. 31, 2007 (Exhibit 2-H to Motion)
(proposing that Plaintiff complete a 32 hour workweek by working on weekdays from
7:00-8:00 a.m. and 4:30-6:30 p.m., with an additional hour for messages, referrals,
scheduling, and other matters; ten hours on Saturdays; and two hours on Sundays).
By this same email, Plaintiff resigned from her Christus position serving non-CJD
patients, in order to avoid any conflict of interest.  *Id.*

[26]    Mitchell Deposition, at 42.

[27]    *Id*. at 46.

[28]    Plaintiff Affidavit, at 3, ¶ 11.  *See* Mitchell Deposition, at 63-64 (Mitchell states that
she told Plaintiff that working 72 hours per week "was a big chunk for anybody" and
(continued...)

Plaintiff considered herself fully capable of working both jobs:

> I had not missed any work at Christus.  I got my work done.  The audit
> passed with flying colors.  I had been doing okay.  I asked her to give me
> a chance, and told her that I needed to stay at Christus until my benefits
> start on my new job. . . .
>
> . . . . I was willing to do whatever I needed to do with my schedule at
> Christus to get my work done.  Many other people at Christus, including
> my manager, had two jobs.  That was not unusual.[29]

Plaintiff therefore was forced to decide whether to stay at Christus with benefits,

despite the uncertainty regarding how much longer her job would exist, or to accept

the new position where her health benefits would not begin for three months.[30]

Shortly after the meeting with Mitchell, Plaintiff left Mitchell a voice mail

---

[28]   (...continued)
asked if she was "sure that she felt up to it," but that she did not tell Plaintiff she could
not work a second job).

[29]   Plaintiff Affidavit, at 3, ¶¶ 11-12.  *See id*. at 5, ¶ 24 ("If I had not informed [Christus]
that I had another job, there was no way they would have known for the 3 months of
waiting for my insurance.  As long as my visits were done, paperwork in on time,
there was no evidence that would have provoked such hostile and stressful treatment
that I received.  Many nurses, and even the social worker, often worked two, and even
three jobs, while working full time at [Christus]."); *id*. at 5, ¶ 23 ("We [nurses] often
worked after 5pm, until 7pm, and even on weekends to get our visits done, based on
family member's requests and to also find clients that were difficult to locate.  Many
of the nurses did this, and of course 8-5 would be ideal to work, but it was often not
reasonable because of the population of patients that we served. . . . I was willing to
work whatever schedule necessary to maintain my work commitment at [Christus].").

[30]   Plaintiff Affidavit, at 3-4, ¶ 15; Plaintiff Deposition, at 202-03.

resigning from her position with Christus.[31]   She soon rescinded the resignation, however, and informed Mitchell by email of her decision "to take my request with this issue to Management for a more fair resolution."[32]   She expressed her hope that Mitchell could "understand and respect my position here to maintain my position on this project, and for my well needed benefits, and to avoid resigning unnecessarily from an assignment/position that I have thoroughly enjoyed for the past year."[33] Plaintiff's email to Mitchell was copied to Paula Wehrman and Judy Lawson in Defendant's human resources department, and requested a private meeting with Wehrman.  It also attached a three-page letter from Plaintiff in support of her request for a flexible schedule.

Plaintiff had more than one meeting with Wehrman, and the parties discussed possible scheduling arrangements.[34]   On March 8, 2007, Plaintiff filed a Charge of Discrimination with the EEOC.  The Charge claims discrimination based on race, retaliation, and disability.[35]  The narrative reads:

---

[31]     Plaintiff Deposition, at 206.

[32]     Email from Plaintiff to Mitchell, Wehrman, and Lawson, dated Feb. 19, 2007 (Exhibit 2-J to Motion).

[33]     *Id.*

[34]     Plaintiff Deposition, at 261-63.

[35]     Charge of Discrimination dated March 8, 2007 (Exhibit 2-K to Motion) ("EEOC (continued...)

I.      On or about February 1, 2007, I requested that I be allowed to continue to work my flexible work schedule as a Field Nurse (RN), in order to secure a second job and maintain my health insurance benefits.  Even though I have worked a flexible schedule since August 2005, my request was denied.  To my knowledge, I am the only Black full-time field nurse and there are other field nurses who are allowed to work flexible schedules and maintain second jobs.

II.     Kay Mitchell, Director of Private Duty Services, told me that my manager, Gay Christ, informed her that no one knew what my schedule and daily assignments were (even though this is called into the PDS department scheduler daily).  Ms. Mitchell told me that she needed me to be available to work from 8:00-5:00 p.m., Mon-Fri, and she questioned whether I could do both jobs because of my history of breast cancer.

III.    I believe that I have been discriminated against because of my race, Black, regarded as being disabled, and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act of 1990, as amended.[36]

The next day, on March 9, Plaintiff again met with Wehrman and worked out a schedule acceptable to both.  Wehrman's confirming email summarizes the schedule, and acknowledges Plaintiff's need to retain health benefits through June 30:

Maria, the following is the schedule that we agreed upon in our meeting today and that you are to follow for Casa Juan Diego patients.

Monday through Thursday       7-9 AM and 4-7 PM

---

[35]     (...continued)
Charge").  Although it appears that this Charge was filed after at least one meeting between Plaintiff and Wehrman, the record is not entirely clear.

[36]     *Id.*

| | |
|---|---|
| Friday | Noon to 3 PM (for meetings with [CJD personnel], the physician, and with [Christ] and/or [Mitchell] |
| Saturday | 10 AM to 6 PM |

This schedule will be in place until June 30th, 2007, which will allow ample time for you to qualify for benefits in your new position.[37]

The scheduling issue about which Plaintiff had complained to the EEOC therefore was resolved.[38]

However, Plaintiff alleges that, after complaining to the EEOC, she was subjected to retaliatory harassment.  In particular, she states that she was required to call her patient visits into her manager, rather than to the scheduler as she had previously; that she was required to turn her paperwork into her manager rather than the scheduler; that she was required to attend weekly meetings with her manager and director to review her work; and that she was required to come to the office at 8:00 a.m. on a morning she returned from leave to give a report in person that she already had provided on paper.[39]  Plaintiff states that these actions were humiliating and caused her unnecessary stress.  She also states that Christ and Mitchell would not greet

---

[37]    Email dated March 9, 2007 (Exhibit 2-M to Motion).

[38]    The agreement between Plaintiff and Wehrman does not mention the grant that funded Plaintiff's salary or when its funds would be exhausted.

[39]    Plaintiff Deposition, at 313-14.

her or "discuss issues in a way that promoted a comfortable atmosphere."[40]

By the end of April, the grant funds for the CJD project were depleted.[41] Plaintiff was informed that, because grant funds were exhausted, her position was being eliminated effective May 1, 2007.[42]  In what Plaintiff alleges was a further act of retaliation, Defendant requested that Plaintiff call the CJD patients and inform them that the services previously offered were being discontinued.[43] Plaintiff was offered positions in other departments, requiring a work schedule of 8:00 a.m. - 5:00 p.m., and declined.[44]  Plaintiff states that these were not meaningful offers because Defendant knew, when offering her positions without a flexible schedule, that she would not be able to accept.[45]

Plaintiff claims that in June 2007, "[a]bout one month after Plaintiff was terminated, the grant was renewed and the project continued, but was closely managed

---

[40]     Plaintiff Affidavit, at 4, ¶ 21.

[41]     Mitchell Deposition, at 93-95; CJD Budget Jan.-Apr. 2007 (Exhibit 4-K to Motion); Affidavit of Leslie Stuart (Exhibit 8 to Motion) (business records affidavit attaching Defendant's financial records relevant to CJD grant).

[42]     Plaintiff Deposition, at 292-93.

[43]     *Id*. at 296-97, 318.

[44]     *Id*. at 298-99, 303.

[45]     *Id*. at 303.

by new managers who directed the profits toward CHRISTUS."[46]

Plaintiff filed this lawsuit on July 28, 2008.

## II.   **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[47]   Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[48]

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue

---

[46]     Response, at 11.  Plaintiff states in her affidavit that the CJD grant money was stretched over a longer period than expected because many medical supplies were donated to CJD, but that she was pressured by Christ and Mitchell to order supplies through Christus instead.  Plaintiff Affidavit, at 2, ¶ 5.

[47]     *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

[48]     FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

of material fact."[49]  The moving party, however, need not negate the elements of the non-movant's case.[50]  The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case."[51]

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.[52]  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[53]

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.[54]  However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory

---

[49]     *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

[50]     *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

[51]     *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (internal citations and quotations omitted).

[52]     *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).

[53]     *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

[54]     *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

facts.'"[55]  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.[56]  Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.[57]  Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."[58]  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.[59]

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.[60]  A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the

---

[55]  *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).

[56]  *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).

[57]  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

[58]  *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).

[59]  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

[60]  *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).

record is to the contrary.[61]

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[62]

## III.   ANALYSIS

The claims that remain pending in this case are race discrimination, retaliation, and breach of contract.[63]  Defendant has requested summary judgment on all pending claims.

### A.   Title VII Claim for Race Discrimination

Under the burden-shifting standard applicable to Title VII claims, a plaintiff claiming race discrimination must establish a *prima facie* case by demonstrating that he or she: (1) is a member of a protected class; (2) was qualified for the position in question; (3) was the subject of an adverse employment action; and (4) was treated

---

[61]   *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

[62]   *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotations omitted).

[63]   Plaintiff's Response withdraws her claims for disability discrimination, sex discrimination, and hostile work environment.  Response, at 12.

less favorably than similarly situated persons who were not members of the protected class.[64]   A plaintiff's *prima facie* case creates an inference of intentional discrimination that shifts the burden back to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.[65]   If the employer provides such an explanation, the inference created by the *prima facie* case drops out, and the plaintiff bears the burden to establish discrimination by offering evidence that the employer's stated explanation is a pretext for racial bias.[66]   Despite this intermediate burden shifting, the plaintiff at all times bears the ultimate burden to demonstrate that the defendant intentionally discriminated.[67]

Plaintiff claims that she was subjected to race discrimination when she was denied a schedule modification, and again when she was terminated.  As for Plaintiff's

---

[64]   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

[65]   *McDonnell Douglas*, 411 U.S. at 802;  *Lee*, 574 F.3d at 259.  The defendant's burden at this stage is a burden of production, not persuasion, and "'can involve no credibility assessment.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 513 (1993)).

[66]   *Reeves*, 530 U.S. at 143; *Lee*, 574 F.3d at 249; *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).  A plaintiff's *prima facie* case, combined with the factfinder's disbelief of the defendant's proffered reasons, may suffice to show intentional discrimination.  *Reeves*, 530 U.S. at 147 (citing *St. Mary's Honor Center*, 509 U.S. at 511).

[67]   *Reeves*, 530 U.S. at 143; *Lee*, 574 F.3d at 259 n. 13 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

claim regarding Defendant's denial of her requested schedule modification, Plaintiff fails to establish a *prima facie* case.  Because her requested schedule modification was in fact granted, albeit after her EEOC Charge was filed,[68] Plaintiff cannot demonstrate an adverse employment action.

As for Plaintiff's claim regarding her termination,[69] Plaintiff has not

---

[68]    The day after Plaintiff filed her EEOC Charge, she met with Defendant's human resources representative, who agreed on a modified schedule through June 30, 2007, that would permit Plaintiff to continue in both jobs.  Email from Wehrman to Plaintiff dated March 9, 2007 (Exhibit 2-M to Motion); Plaintiff Deposition, at 231.

[69]    Defendant raises two threshold issues to Plaintiff's claim that her termination was motivated by race discrimination.  First, Defendant argues that Plaintiff is not entitled to pursue the claim because she did not exhaust it before the EEOC.  Plaintiff filed her EEOC Charge on March 8, 2007, and Defendant terminated her employment on May 1, 2007.  Plaintiff did not file an additional EEOC Charge after her termination.  Defendant urges that, under recent Supreme Court precedent, each discrete act of discrimination is a separate actionable employment practice for which administrative remedies must be exhausted, citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002).   *Morgan* does not govern the circumstances at bar.  Rather, *Morgan* dealt with several pre-EEOC charge incidents, holding that discrete discriminatory acts occurring before the 300-day period covered by the plaintiff's EEOC charge were untimely and no longer actionable.   By contrast, Plaintiff complains of a termination occurring *after* her Charge was filed.  When applying Title VII law to such facts, the Fifth Circuit has continued to hold, after *Morgan*, that an EEOC charge will be construed broadly and "in terms of the administrative EEOC investigation that 'can reasonably be expected to grow out of the charge of discrimination.'" *McClain v. Lufkin Inds., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (quoting *Sanchez v. Standard Brands, Inc*., 431 F.2d 455, 465 (5th Cir. 1970)).   It is far from clear that *Morgan* is applicable to the circumstances at bar.  But, because the parties have not briefed or argued the application of the "reasonably expected to grow out of the charge" standard, the Court does not reach the issue.

Second, Defendant urges dismissal of Plaintiff's termination claim because it is not clearly pleaded in Plaintiff's First Amended Complaint [Doc. # 24].  However, the
(continued...)

demonstrated a genuine issue of material fact on the fourth prong of the *prima facie* case, *i.e.*, that she was treated less favorably than other, similarly situated employees.[70]

 Plaintiff's Response fails to identify any comparators at all and, when asked at deposition, Plaintiff was unable to name any similarly situated employees.[71] Therefore, she fails to demonstrate a *prima facie* case.[72]

In addition, Plaintiff fails to demonstrate a genuine factual issue that her termination ultimately was motivated by race discrimination. Because Defendant has articulated a legitimate, non-discriminatory basis for Plaintiff's termination—the exhaustion of the grant funds from which her salary was paid—the burden shifts back to Plaintiff to show that Defendant's proffered reasons are a pretext for race

---

[69]    (...continued)
amended complaint attaches, as Exhibit A, Plaintiff's original complaint filed on July 28, 2008. Employment Discrimination Complaint [Doc. # 1]. The original complaint alleges termination based on race.  *Id*. at second unnumbered page.  The Court therefore declines to dismiss Plaintiff's claim on this basis.

[70]    *See Lee v. Kansas City S. Ry. Co*., 574 F.3d 253, 260 (5th Cir. 2009) (Fifth Circuit requires "that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken 'under nearly identical circumstances'") (quoting *Little v. Republic Ref. Co*., *Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991); *Wyvill v. United Cos. Life Ins. Co*., 212 F.3d 296, 302 (5th Cir. 2000) (employees who had different supervisors than plaintiff, worked in different departments, or whose terminations were removed in time from plaintiff's termination are not similarly situated).

[71]    Plaintiff Deposition, at 220-21, 280-81.

[72]    Factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander*, 392 F.3d at 142 (quoting *Olabisiomotosho*, 185 F.3d at 525); *see Malacara*, 353 F.3d at 405.

discrimination.   However, Plaintiff's Response does not point the Court to any evidence that Plaintiff's termination was based on her race.[73]   When asked at deposition about Defendant's motivation, Plaintiff acknowledged that she had no specific incidents supporting her allegation of race discrimination, and that race discrimination was her "perception":

> Q.   Do you believe what motivated the company with regard to [your termination] was race, retaliation, or both?
>
> A.   I believe that it was more retaliation.  I can't say—I can't give you any factual information on race.  I just know that —I just—my perception is, yes, that it is race and retaliation.[74]

Plaintiff also conceded that she had not been subject to racial slurs.[75]  In fact, Plaintiff ascribes financial, and not racial, motives to Defendant, arguing that Defendant

---

[73]   Plaintiff's Response cites to no evidence of race discrimination.  She merely alleges, without citation, that Defendant's actions "were based on [Plaintiff's] race, that of an African-American female, attempting to excel in an environment ruled by Caucasian females who conducted themselves with a racially discriminatory attitude concerning African-Americans."  Response, at 18.

[74]   Plaintiff Deposition, at 313.

[75]   *Id*. at 248 ("I cannot give you the specifics that you're asking me for.  I can't.  This is based on how I felt I was being treated.  I know you're—you need something carved in granite, that I was called a nigger or the "N" word or something.  I don't have that for you."); *id*. at 309 ("If I could tell you that they called me the "N" word, I—that's carved in granite.  But I don't have anything like that except my perception of how others were treated . . . ."); *id*. at 309 (when asked "You're saying that there were no racial slurs or epithets or race-related remarks made, right?," Plaintiff answered, "Not directly to me.  But I was told in my department that they talked about me all the time . . . .").

"needed an excuse to transfer the position to another department to put someone in charge who would direct orders for services and equipment to Christus," whereas Plaintiff and CJD staff had previously arranged for donated services and equipment that did not require expenditure of grant funds.[76]

Plaintiff bears the burden to show that race was Defendant's true motive,[77] and has failed to do so.   Her subjective belief that race discrimination motivated Defendant's actions is insufficient to defeat summary judgment.[78]

### B.    Title VII Claim for Retaliatory Discharge after Complaint to EEOC

Plaintiff alleges that her position with Defendant was terminated in retaliation for her complaint to the EEOC.[79]   Title VII prohibits an employer from retaliating

---

[76]    Response, at 14.

[77]    *Reeves*, 530 U.S. at 143.

[78]    *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 153 (5th Cir. 1995).

[79]    As with Plaintiff's claim of race discrimination, Defendant argues that Plaintiff's retaliation claim is barred by *Morgan*, which held that each discrete act of discrimination or retaliation is a separate actionable employment practice for which administrative remedies must be exhausted. *Morgan*, 536 U.S. at 114-15.  Plaintiff filed her EEOC Charge on March 8, 2007, complaining about her job reassignment and did not file another charge after she was terminated. Under Fifth Circuit precedent, this Court has ancillary jurisdiction over Plaintiff's claim that she was retaliated against based on her complaint to the EEOC:

> [W]e hold that it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before

(continued...)

against an employee who brings a charge of discrimination.[80]  Retaliation claims, like discrimination claims, are decided under *McDonnell Douglas*' burden-shifting framework.  To establish a *prima facie* case of unlawful retaliation, a plaintiff must show that: (1) the plaintiff participated in an activity protected by Title VII; (2) the employer took an adverse employment action against the plaintiff; and (3) a causal connection exists between the protected activity and the adverse action.[81]  If plaintiff establishes a *prima facie* case, the employer must articulate a legitimate,

---

[79]    (...continued)
the court.

*Gupta v. East Tex. St. Univ.*, 654 F.2d 411, 414 (5th Cir. 1981).  Although other courts outside the Fifth Circuit have applied *Morgan* to claims based on retaliation subsequent to an EEOC charge properly before the Court, *see, e.g.*, *Martinez v. Potter*, 347 F.3d 1208 (10th Cir. 2003), *Morgan* itself did not address that factual scenario.  Rather, *Morgan* concerned a hostile environment claim and allegedly hostile acts occurring before the 300-day period covered by the plaintiff's EEOC charge.  The Fifth Circuit has not squarely addressed the effect of *Morgan* on the *Gupta* holding.  Unpublished Fifth Circuit cases decided after *Morgan* have continued to rely on *Gupta*.  *Eberle v. Gonzales*, 240 F. App'x 622, 628-29 (5th Cir. 2007); *see Stevenson v. Verizon Wireless, LLC*, 2009 WL 129466 (N.D. Tex. Jan. 16, 2009) (Fish, J.) (discussing *Morgan*'s impact on *Gupta*); *Griggs v. Univ. Health Sys.*, 2007 WL 708608 (W.D. Tex. Mar. 7, 2007) (Rodriguez, J.) (same).  *See also Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 303 (4th Cir. 2009) (rejecting Tenth Circuit's holding that *Morgan* bars retaliation claims not separately exhausted).  The Court therefore rejects Defendant's argument for an extension of *Morgan* and, in keeping with Fifth Circuit authority, holds that Plaintiff's retaliation claim is properly before the Court.

[80]    42 U.S.C. § 2000e-3.

[81]    *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)).

nondiscriminatory reason for its employment action.[82]  Once the employer does so, the

burden shifts back to the plaintiff to establish that the employer's stated reason is a

pretext for actual retaliatory purpose.[83]  Plaintiff's ultimate burden is to show that her

position would not have been eliminated "but for" her engagement in protected

activity.[84]

When considering a plaintiff's evidence of pretext, the Court "is not to engage

in second-guessing of an employer's business decisions."[85]  Moreover, a plaintiff's

disagreement with the reasons for the employer's decision is insufficient to create an

issue of pretext.[86]   A plaintiff's subjective belief that retaliation motivated the

defendant's actions also is insufficient.[87]

---

[82]     *Id.*

[83]     *Id.*

[84]     *See Septimus v. Univ. of Houston*, 399 F.3d 601, 608 & n.15 (5th Cir. 2005) (citing, *inter alia*, *Pineda v. United Parcel Serv. Inc.*, 360 F.3d 483, 487 (5th Cir. 2004); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001)).  The *Septimus* Court rejected the less stringent "motivating factor" test.  *Id.* at 608.

[85]     *LeMaire v. La. Dep't of Transp. and Dev't*, 480 F.3d 383, 391 (5th Cir. 2007).

[86]     *Id.* ("Our anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones.") (citing *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)).

[87]     *Aryain*, 534 F.3d at 487 ("[a] plaintiff cannot prove pretext simply by re-raising her otherwise non-actionable allegations of retaliation—such an argument offers no more than the plaintiff's subjective belief that the defendant acted in a retaliatory manner on multiple occasions") (citing *Septimus*, 399 F.3d at 611 (plaintiff's speculation as (continued...)

The Court will assume, without deciding, that Plaintiff can establish a *prima facie* case that her termination was based on retaliation.  Defendant has articulated a non-retaliatory reason for her termination, which is the exhaustion of the grant funds from which Plaintiff's salary was paid.  Plaintiff therefore bears the burden to show that this stated reason is a pretext for retaliatory intent.

Plaintiff argues that her position was not eliminated, but instead was transferred to a different Christus department after her employment was terminated, and that other Christus employees were assigned to CJD.[88]  Plaintiff, though, has cited no admissible evidence to support her argument.[89]  In fact, in her deposition, Plaintiff testified that

---

[87]    (...continued)
to retaliatory motive is insufficient); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (plaintiff's subjective belief insufficient)).

[88]    Plaintiff also mentions the closeness in time between her EEOC Charge and her termination as support for her retaliation claim.  Response, at 18.  However, temporal proximity alone is insufficient to show pretext. *Aryain*, 534 F.3d at 487 (citing *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2001)).

[89]    Response, at 10-11 (citing Plaintiff Affidavit, at 7, ¶ 33); *id.* at 17-18 (no citation to record).  Defendant has moved to strike the cited portion of Plaintiff's Affidavit, arguing that Plaintiff's statement that the position was transferred is inadmissible because Plaintiff has no personal knowledge, gives no foundation for the statement and, to the extent she learned of the alleged transfer from an outside source, the statement is hearsay.  Defendant's Motion to Strike Plaintiff's Summary Judgment Affidavit [Doc. # 46], at 10.  Plaintiff's only response is that the statement should not be stricken because "[i]t is true."  Plaintiff's Response in Opposition to Defendant's Motion to Strike Plaintiff's Summary Judgment Affidavit [Doc. # 47], at 6.  Because Plaintiff has not demonstrated the admissibility of her statement, the statement is stricken.  *See Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 504 (5th Cir. 1999) (on summary judgment, admissibility of evidence is governed by same standards that (continued...)

she did not know whether the grant ended or not, and that she was not sure whether someone from Christus was performing her previous job duties with the CJD patients.[90]  In light of Defendant's uncontradicted evidence demonstrating that grant funds were in fact exhausted when Defendant stated they were and that Plaintiff acknowledged she was paid from the grant funds,[91] Plaintiff has failed to demonstrate a genuine issue of material fact that Defendant's stated reason for her termination was false or otherwise pretextual.[92]

## C.    <u>Breach of Contract</u>

---

[89]    (...continued)
govern admissibility of evidence at trial), overruled on other grounds, *Mathis v. Exxon Corp.*, 302 F.3d 448 (5th Cir. 2002).

[90]    Plaintiff Deposition, at 305-06.

[91]    Affidavit of Leslie Stuart (Exhibit 8 to Motion) (business records affidavit attaching Defendant's financial records relevant to CJD grant).

[92]    To the extent Plaintiff urges a claim for retaliatory harassment, such claim fails on the *prima facie* case because Plaintiff has not demonstrated a genuine fact question regarding the second prong, *i.e.*, adverse employment action.  Plaintiff complains that, after complaining to the EEOC, she had additional reporting requirements to her manager, was required to attend a weekly meeting to review her work, and was required once to come into the office unnecessarily at an inconvenient time, and that Defendant requested that she call the CJD patients and inform them that the services previously offered were being discontinued.  The Supreme Court has emphasized that "it is important to separate significant from trivial harms," and that Title VII does not set forth "'a general civility code for the American workplace.'"  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). "[P]etty slights, minor annoyances, and simple lack of good manners" are insufficient to deter employees from bringing retaliation claims, and thus are not materially adverse.  *Id.*

Plaintiff alleges that Christus breached a contract with her when, despite the commitment in Wehrman's email on March 9, 2007, Christus terminated her position prior to June 30, 2007.[93] In order to prevail on a breach of contract claim, a plaintiff must establish (1) the existence of a contract, (2) the performance or tender of performance by the plaintiff, (3) a breach by the defendant, and (4) damages as a result of that breach.[94]

Defendant argues that Wehrman's email was not a valid contract because its alleged promise of continued employment was not supported by consideration. Plaintiff was an at-will employee,[95] and therefore any contract purporting to limit Defendant's ability to terminate her employment was unenforceable:

> Under Texas contract law, at-will employees may contract with their employers on any matter except those which would limit the ability of either employer or employee to terminate the employment at will. Consideration for a promise, by either the employee or the employer in an at-will employment, cannot be dependent on a period of continued employment. Such a promise would be illusory because it fails to bind the promisor who always retains the option of discontinuing employment

---

[93]   Email dated March 9, 2007 (Exhibit 2-M to Motion) ("This schedule will be in place until June 30th, 2007, which will allow ample time for you to qualify for benefits in your new position.").

[94]   *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003) (citing *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000, no pet.)).

[95]   The law presumes at-will employment relationships in Texas. *Montgomery Cty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). Plaintiff agreed at her deposition that her employment with Defendant was at-will. Plaintiff Deposition, at 99-100.

in lieu of performance.  When illusory promises are all that support a purported bilateral contract, there is no contract. [96]

The Texas Supreme Court further explained that, for example, a promise of a raise to an at-will employee is illusory because, "[u]pon promising a raise in wages, the employer could fire the employee and be under no obligation to perform the promise."[97]

Plaintiff has not argued that Defendant's alleged promise was supported by consideration.  Plaintiff's sole argument in opposition to summary judgment is that Defendant's argument is "illogical due to the fact that Plaintiff's performance had never been criticized."[98]  Defendant's argument is insufficient and does not address the meritorious legal issues raised by Defendant's Motion.

Summary judgment is granted for Defendant on Plaintiff's claim for breach of contract.

## IV.   **CONCLUSION**

For all of the foregoing reasons, it is hereby

---

[96]   *Carson v. Dynegy, Inc*., 344 F.3d 446, 452 (5th Cir. 2003) (quoting *Light v. Centel Cellular Co*., 883 S.W.2d 642, 644-45 (Tex. 1994)) (alterations omitted).

[97]   *Light*, 883 S.W.2d at 645.  *See Cent. Tex. Micrographics v. Leal*, 908 S.W.2d 292, 296 (Tex. App. – San Antonio, 1995) (employer's promise to reward employee's hard work with a trip to Cancun was a gratuitous promise unsupported by consideration; employee did not perform any additional work other than that he had already contracted to perform).

[98]   Response, at 19.

**ORDERED** that Defendant Christus' Motion for Summary Judgment [Doc. # 38] is **GRANTED**.  It is further

**ORDERED** that Defendant Christus' Motion to Strike Plaintiff's Summary Judgment Affidavit [Doc. # 46] is **GRANTED IN PART** as stated herein.  The remainder of the motion is **DENIED AS MOOT**.

A separate final judgment will issue.

SIGNED at Houston, Texas, this **25<u>th</u>** day of **September, 2009**.

Nancy F. Atlas
United States District Judge